J. JONES, Justice,
dissenting.
I dissent from the Court’s opinion based upon the peculiar wording in Desert View’s Social Media Policy (Policy). The Commission determined that Talbot was discharged for misconduct for having violated the Policy. The language of the Policy is simply ineffective to make Talbot’s conduct violative of its specific terms.
The portion of the Policy that Talbot was alleged to have violated, Section 3.2.2.2.b, reads:
General Conduct: [Desert View] also expects employees to treat physicians, providers, vendors, conservators, regulators, competitors, fellow employees, managers, and the family members of our patients with respect electronically, as well as in-person. As with the conduct expected of employees at their worksite, employees will at all times avoid slanderous, vulgar, obscene, intimidating, threatening or other “bullying” behavior electronically towards any of the groups identified above or towards other facility stakeholders.
The IDOL appeals examiner, based on the hearing where the missing audio recording was made, determined that the “employer’s policy regarding media is vague in regards to Face Book,” and that the employer had “not shown by a preponderance of the evidence that the claimant was discharged for misconduct in connection with employment.” Since the Commission heard the matter de novo, those conclusions were not binding on the Commission, nor are they on the Court. Apparently, when the Commission listened to the same audio recording, it determined that the Policy did apply to Facebook. This is not an unreasonable conclusion. After all, Facebook is obviously a part of social media. In this regard, the Commission is correct.
The Commission mistakenly references the provisions of Section 3.2.2.2.b to support its conclusion that Talbot was properly discharged for misconduct. According to the Commission, Desert View “discharged [Talbot] ... for posting a derogatory and threatening statement about a patient on Facebook in violation of [Desert View’s] social media policy.” (emphasis added) Further, the Commission stated that Desert View “had a reasonable expectation that [Talbot] would not make a derogatory and/or threatening statement about a patient on Facebook” because Desert View’s “policy specifically prohibits any ‘slanderous, vulgar, obscene, intimidating, threatening or other bullying behavior *523 electronically’ towards facility stakeholders, including patients.” (emphasis added) Those findings make it clear that Talbot was discharged for an alleged violation of Section 3.2.2.2.b. A careful reading of the section discloses that it does not apply to Desert View patients.
The first sentence of Section 3.2.2.2.b specifies a number of groups that must be respected electronically and in person. The laundry list does not include patients. The only mention of patients is “the family members of our patients.” The second sentence cannot be properly read to include patients, either. That sentence requires employees to avoid certain behavior toward “the groups identified above” or “other facility stakeholders.” (emphasis add) The use of the term “other stakeholders” indicates that the groups identified in the first sentence are stakeholders. All of the stakeholders are groups and all of the groups of stakeholders are third parties — persons other than patients. It may well be that the defective language of Section 3.2.2.2.b was unintentional but it can’t be read to apply to conduct directed toward patients. It may be that the drafter thought that some other policy applied. The record contains no documentary evidence of a social media policy applying specifically to patients. Nevertheless, the Commission based its decision on this defective language. The Commission did not rule upon an alternate ground to support the discharge.
Nothing in the Commission’s findings indicates that any source or party defined the term “stakeholder.” At the oral argument of this appeal, it was readily apparent that Talbot had no idea what a stakeholder was. When asked if he was familiar with the term “facility stakeholder,” Talbot replied, “I don’t even know what that means now to be honest with you. I envision somebody holding meat. It’s a steakholder. I really have no idea what that means____ Somebody having an interest in the company? Somebody holding a stake. I guess I don’t know.” Of course, this reaction cannot substitute for the missing IDOL audio recording, but it does demonstrate the imprecision of the term “facility stakeholder” to identify a patient, when patients are not made specifically subject to the protections of Section 3.2.2.2.b.
The record simply does not support the ground chosen by the Commission for determining that Talbot was discharged for misconduct. The Commission made no finding that the terms of Section 3.2.2.2.b, which Talbot was charged with violating, had been amended in any fashion. Regardless of what may or may not have been said during the IDOL hearing that was the subject of the missing audio recording, the specific wording of the Policy remains as currently stated in the documentary record. The Commission did not base its decision on any other ground.
“The employer must prove by a preponderance of evidence that the discharge was for misconduct or the claimant will be awarded benefits.” Quinn v. J.R. Simplot Co., 131 Idaho 318, 320, 955 P.2d 1097, 1099 (1998). When a discharge is based on an employee’s violation of a standard of behavior, “to meet the standard-of-behavior test and prove discharge for misconduct, an employer’s expectations are ordinarily reasonable only where they have been communicated to the employee.” Harris v. Electrical Wholesale, 141 Idaho 1, 4, 105 P.3d 267, 271 (2004). And, “for unemployment insurance purposes, in order for the discharge of an employee to qualify as being for ‘misconduct’ such as to deny a claimant unemployment benefits, the communication standard is higher and more specific than what would be necessary simply to discharge an employee for cause.” Id. The record does not disclose that such showings were made and there is simply not substantial and competent evidence in the record to support the Commission’s determination based on the specific, unaltered language of Section 3.2.2.2.b. I would reverse.
Justice W. JONES concurs.